IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALBERTO SOLER,
    Petitioner,

vs.                                      Case No. 3:03cv515/RV/EMT

DONALD BAUKNECHT, WARDEN,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

    This matter is before the court on Petitioner's second amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (Doc. 63).  Respondent filed a response (Doc. 74), to which Petitioner has replied (Docs. 82, 83).

    Petitioner is a federal prisoner convicted in the United States District Court for the Southern District of Florida of two counts of possession of marijuana, one count of possession of cocaine, and one count of manufacture of marijuana in violation of 21 U.S.C. §§ 841 and 856.  On February 4, 2003, he was sentenced to two 60-month terms of incarceration on the possession of marijuana counts and two 96-month terms of incarceration on the other counts, all sentences to run concurrently.  He is currently housed at the Federal Correctional Complex in Coleman, Florida.  Petitioner concedes the Bureau of Immigration and Customs Enforcement (BICE) has lodged a detainer against him.

    In this habeas action Petitioner seeks a judicial declaration that the regulations and program statements of the Bureau of Prisons (BOP) are invalid with regard to eligibility for placement in a Community Corrections Center (CCC) and eligibility for a one year sentence reduction following completion of a residential drug abuse program (RDAP) for inmates who have immigration detainers lodged against them.  He also seeks an injunction requiring the BOP to consider placing him in a

CCC, or granting him a one year reduction in sentence upon completion of RDAP without placement in a CCC.  Additionally, he seeks an injunction requiring the BOP to initiate administrative rulemaking procedures to issue, amend, or repeal rules to permit non-citizen prisoners with detainers to be placed in CCC's.  Petitioner alleges the Bureau of Prisons ("BOP") has improperly denied him eligibility for CCC placement and a sentence reduction because of the BICE detainer.  Petitioner challenges the BOP rules and regulations on the following grounds:[1]

>        (1) Petitioner has a protected liberty interest in CCC placement and a sentence reduction, and the BOP has deprived him of that interest without due process of law;

>        (2) the BOP abused its discretion by denying Petitioner placement in a CCC and a sentence reduction;

>        (3) the BOP's refusal to grant Petitioner CCC placement and a sentence reduction is based upon an unreasonable interpretation of 18 U.S.C. § § 3621(e) and 3624(c);

>        (4) the BOP's refusal to grant non-citizen prisoners with detainers placement in CCC's and sentence reductions violates the Equal Protection Clause;

>        (5) the BOP's application of 28 C.F.R. § 550.58(v) and Program Statement 5330.10 to Petitioner violates the Ex Post Facto Clause;

>        (6)  BOP regulations and program statements are invalid under the Administrative Procedures Act (APA) because the BOP failed to comply with the notice and comment requirements of the APA; and

>        (7) the BOP violated the APA by failing to act on Petitioner's petitions filed pursuant to 5 U.S.C. § 553(e).

Respondent contends the instant petition in subject to dismissal because Petitioner's claims were not exhausted at the time he filed his original petition, although Respondent concedes the claims have now been exhausted.  Additionally, Respondent argues Petitioner was properly denied CCC placement and the sentence reduction due to the BICE detainer.

II.     RELEVANT STATUTES, REGULATIONS, AND POLICY STATEMENTS

---

[1] Petitioner's claims have been consolidated for organizational purposes.

Section 3621 of Title 18 of the United States Code provides, in relevant part:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, . . . that the Bureau determines to be appropriate and suitable, considering--
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

If an inmate completes a drug and alcohol treatment program authorized under 18 U.S.C. § 3621(e), "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). Thus, the statute provides an incentive for inmates to enroll in and complete the treatment program. However, the statute makes permissive the BOP's determination to grant a reduction in sentence upon an inmate's successful completion. When an eligible inmate successfully completes drug treatment, the BOP has the authority, but not the duty, to reduce his term of imprisonment. Lopez v. Davis, 531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001). The BOP's statutory grant of discretion is limited in only two respects: first, that only inmates convicted of "non-violent offenses" be considered eligible for the sentence reduction; and second, that the sentence reduction not exceed one year. *See* Sesler v. Pitzer, 926 F. Supp. 130, 132-133 (D. Minn. 1996), *aff'd*, 110 F. 3d 569 (8th Cir.), *cert. denied*, 118 S. Ct. 197 (1997). Additional

regulations to guide the discretionary implementation of the RDAP have been promulgated and are codified in the Code of Federal Regulations and BOP program statements.

> Title 28 C.F.R. § 550.58 provides, in relevant part:
>
> An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
> (a) Additional early release criteria.
> (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
> . . . .
> (v) Inmates who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion;
> . . . .
> (3) An inmate who has successfully completed a Bureau of Prisons residential drug abuse treatment program on or after October 1, 1989 is otherwise eligible if:
> (i) The inmate completes all applicable transitional services programs in a community-based program (i.e., in a Community Corrections Center or on home confinement); and
> (ii) Since completion of the program, the inmate has not been found to have committed a 100 level prohibited act and has not been found to have committed a prohibited act involving alcohol or drugs.

Guidance for wardens making eligibility determinations for participation in community-based programs (CCC's) is set forth in the BOP program statements. Program Statement 5330.10 provides, in part:

> The rules language contained above in (6) (a), (b), (c), and (d) [the language is a verbatim repetition of the language of 28 C.F.R. § 550.58(a)(1)] is also contained as implementing text in the Program Statement on Categorization of Offenses. This policy has been developed to assist in the implementation of various Bureau policies and programs. More specifically, an inmate may or may not be qualified for early release under 18 U.S.C. § 3621(e) in the following circumstances:
>
> . . . .
> (5) <u>The inmate is not excluded from a community-based program placement</u>. For early release consideration under § 3621(e) and in accordance with the opening paragraph of this section, an inmate must be able to participate in community-based programs so as to complete the transitional services component of treatment in a Community Corrections Center or on home confinement.

BOP Program Statement 5330.10, <u>Drug Abuse Programs Manual, Inmate</u>, Chp. 6, pp. 1-3 (Oct. 9, 1997).  Additional guidance is found in Program Statement 7310.04:

> 10.    <u>LIMITATIONS ON ELIGIBILITY FOR ALL CCC REFERRALS</u>: Inmates in the following categories shall not ordinarily participate in CCC programs:
> . . . .
> f.    Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement.

BOP Program Statement 7310.04, <u>Community Corrections Center (CCC) Utilization and Transfer Procedures</u>, p. 10 (Dec. 16, 1998).  Thus, a federal prisoner who has a BICE detainer lodged against him is not eligible for placement in a CCC and, therefore, may not obtain a section 3621(e)(2)(B) sentence reduction.

III.    ANALYSIS

Initially, this Court rejects Respondent's contention that Petitioner has failed to fulfill the exhaustion requirement.  Respondent concedes that although Petitioner had not exhausted his administrative remedies at the time of filing his petition, he exhausted his administrative remedies during the pendency of this action (*see* Doc. 74 at 4-5).  Accordingly, this Court concludes the exhaustion requirement has been satisfied.  Having resolved the exhaustion issue, the court will consider Petitioner's claims.

> A.    <u>Petitioner has a protected liberty interest in CCC placement and the sentence reduction, and the BOP has deprived him of that interest without due process of law.</u>

Petitioner asserts a due process challenge with respect to the BOP's denial of his eligibility for placement in a CCC and a sentence reduction.  While due process protections apply to prisoners, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974, 41 L. Ed. 2d 935 (1974); <u>Cook v. Wiley</u>, 208 F.3d 1314, 1322 (11th Cir. 2000) (citing <u>American Mfrs. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 59, 119 S. Ct. 977, 989, 143 L. Ed. 2d 130 (1999)), they exist only to protect a due process liberty interest.

It is well established that prisoners have no legal right to be placed in a particular institution with particular rules, regulations and privileges.  <u>Meachum v. Fano</u>, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); <u>Montayne v. Haymes</u>, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).  Furthermore, section 3621 grants the BOP unfettered discretion in designating the place of a

prisoner's imprisonment and determining whether to transfer a prisoner from one penal or correctional facility to another, so long as there is no favoritism given to prisoners of high social or economic status. 18 U.S.C. § 3621(b). Thus, Petitioner has failed to establish a constitutionally protected liberty interest in transfer to a CCC.

Additionally, prisoners have "no constitutional or inherent right" to release before the completion of a valid sentence. Cook, 208 F.3d at 1322 (citing Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7, 99 S. Ct. 2100, 2103-04, 60 L. Ed. 2d 668 (1979)). If the relevant statute does not place "substantive limitations" on the discretion involved in granting early release, then "no constitutionally protected liberty interest is implicated." Cook, 208 F.3d at 1322-23 (citing Olim v. Wakinekona, 461 U.S. 238, 249, 103 S. Ct. 1741, 1747, 75 L. Ed. 2d 813 (1983)).

In interpreting section 3621(e)(2)(B), the Eleventh Circuit has held that the decision whether or not a statutorily eligible prisoner should receive a sentence reduction "remains solely within the discretion of the BOP." Cook, 208 F.3d at 1319. The authority granted to the BOP under section 3621(e)(2) is permissive, not mandatory. Because this statute leaves sentence reductions "to the unfettered discretion of the BOP, the statute does not create a constitutionally protected liberty interest." Cook, 208 F.3d at 1323; Fristoe v. Thompson, 144 F.3d 627, 630 (10th Cir. 1998); Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998). Moreover, not awarding the one year sentence reduction does not "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Jacks v. Crabtree, 114 F.3d 983, 986, n.4 (9th Cir. 1997) (citing Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). It simply means that the prisoner will have to complete his expected sentence. *Id.* Accordingly, Petitioner's due process claim fails.

> B. The BOP's refusal to grant Petitioner CCC placement and a sentence reduction is contrary to its own rules and regulations.

Petitioner contends the BOP's refusal to place him in a CCC due to his detainer is contrary to its rules permitting inmates with detainers to work in federal community agencies, participate in community service projects, obtain medical and other furloughs, and participate in educational and occupational programs. The fact that BOP rules and regulations distinguish between community

Case No.: 3:03cv515/RV/EMT

programs in which inmates with detainers may or may not participate, does not render the agency regulations contrary to one another. Therefore, Petitioner's claim is without merit.

    C.    <u>The BOP's refusal to grant Petitioner CCC placement and a sentence reduction, while permitting his participation in other community programs, is based upon an unreasonable interpretation of 18 U.S.C. § § 3621(e) and 3624(c).</u>[2]

The APA gives courts the power to review agency action and to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). The controlling analysis, set forth in <u>Chevron, U.S.A., Inc. v. National Resources Defense Council</u>, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), is as follows:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress. If, however, the Court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

<u>Chevron</u>, 467 U.S. at 842-843 (footnotes omitted).

The District Court for the Northern District of Florida has previously considered the issue of whether the BOP's refusal to grant CCC placement and sentence reductions to inmates with immigration detainers constitutes an unreasonable interpretation of 18 U.S.C. § § 3621(e) and 3624(c) and has determined that the BOP's refusal is not an unreasonable determination of those statutes. *See* <u>Betancourt v. Federal Bureau of Prisons</u>, Case No. 3:00cv486/LAC/SMN (N.D. Fla.

---

[2]Section 3624 of Title 18 of the United States Code provides, in relevant part:

    **(c) Pre-release custody**.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

July 5, 2001) and Hernandez v. Hall, Case No.: 5:99cv150/RH/MD (N.D. Fla. Oct.5, 1999). Based upon the reasoning set forth in those decisions, copies of which are attached to this Report and Recommendation, this Court concludes the BOP's refusal to grant CCC placement and sentence reductions to inmates with immigration detainers does not constitute an unreasonable interpretation of 18 U.S.C. § § 3621(e) and 3624(c).

> D. The BOP's refusal to grant non-citizen prisoners with detainers placement in CCC's and sentence reductions violates the Equal Protection Clause.

Petitioner next claims that the BOP refuses to approve CCC placement for non-citizen inmates with detainers, but permits placement for "Mariel Cuban" non-citizen inmates, non-citizen immigration detainees involved in removal proceedings, and other non-citizen prisoners, in violation of the Equal Protection Clause (*see* Doc. 63 at 3, 10-11). Additionally, Petitioner contends Warden Bauknecht is treating him arbitrarily because the warden of the federal prison camp in Miami, Florida permits CCC placement for inmates with BICE detainers (*id*. at 6). In his reply to Respondent's answer, Petitioner somewhat changes his argument to contend that the BOP refuses to grant CCC placement to all non-citizens, in violation of the Equal Protection Clause (Doc. 82 at 7-8).

A federal law that discriminates against aliens or distinguishes among groups of aliens is subject to the rational basis test. *See* Rodriguez ex rel. Rodriguez v. United States, 169 F.3d 1342, 1350 (11th Cir. 1999). Thus the exclusion of aliens with detainers and aliens generally from CCC placement and sentence reductions is valid if there is rational relationship between the disparity of treatment and some legitimate governmental purpose. *See* McLean v. Crabtree, 173 F.3d 1176, 1186 (9th Cir. 1999).

The requirement that inmates complete a community-based treatment program was implemented simultaneously with the detainer exclusion. *See* 28 C.F.R. § 550.58; 61 Fed. Reg. 25121. Certain prisoners are precluded from community based treatment programs due to custodial and public safety considerations. Immigration detainees and non-citizen inmates are included in this group because they are subject to possible deportation upon release from custody and are therefore a flight risk. Such prisoners would have more reason to flee a half-way house than would those who could rejoin their communities upon completion of the CCC requirement. A reasonable way to

eliminate the flight risk of immigration detainees and non-citizen inmates is to avoid placing them in a community-based facility.  Therefore, excluding such prisoners from participation in community-based treatment programs and thereby making them ineligible for sentence reduction is rationally related to the BOP's legitimate interest in preventing these prisoners from fleeing these facilities.  *See* McLean, 173 F.3d at 1184; *see also* Rublee v. Fleming, 160 F.3d 213 (5th Cir. 1998) (finding that BOP was within its discretion to deny early release to an inmate ineligible for participation in community-based treatment program due to flight risk).  Furthermore, the fact that Warden Bauknecht enforces the statutes and rules against his inmates, but the warden of the federal prison camp in Miami may not, does not constitute a violation of the Equal Protection Clause.

    E.    The BOP's application of 28 C.F.R. § 550.58(v) and Program Statement 5330.10 to Petitioner violates the Ex Post Facto Clause.

Petitioner next claims the BOP's application of 28 C.F.R. § 550.58 and Program Statement 5330.10 to his request for CCC placement violates the Ex Post Facto Clause because Petitioner committed his offenses prior to the effective date of 550.58.

Article I, section 9 of the Constitution prohibits the federal government from enacting ex post facto laws.  "One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236 (2000).[3]  The Supreme Court has held that this prohibition applies to statutes, rules and regulations governing administrative agencies. *See* Garner, *supra* (applying ex post facto doctrine to decision of parole board); Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (applying ex post facto doctrine to statute governing early release).  Furthermore, the presence of agency discretion "does not displace the protections of the *Ex Post Facto Clause . . .*" Garner, 529 U.S. at 253, 120 S.Ct. 1362.  To establish an ex post facto violation, Petitioner must show:  (1) the legislative modification is retrospective, that is, it applies to events occurring before its enactment, and (2) the new law creates a sufficient risk of increasing the punishment attached to Petitioner's crime. California Dept. of Corrections v. Morales, 514 U.S.

---

[3]Although the Ex Post Facto Clause to which the Supreme Court referred in Garner is the Clause applied to the States, set forth in Article I, section 10 of the Constitution, the analysis of federal and state laws under the respective ex post facto clauses is the same.

Case No.:  3:03cv515/RV/EMT

499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) ([T]he focus of the ex post facto inquiry is not on whether a legislative change produces some sort of 'disadvantage' . . . but on whether any such change . . . increases the penalty by which a crime is punishable."); Lynce, 519 U.S. at 444 (ex post facto analysis should focus on "the effect of the law on the inmate's sentence").

In the instant case, Petitioner has failed to show that the enactment of 28 C.F.R. § 550.58 increased his punishment. Well before Petitioner committed his crimes in October and November of 2000, the BOP conditioned the grant of early release upon completion of "all applicable transitional services programs." 60 FR 27692, 27695 (May 25, 1995) (codified at 28 C.F.R. § 550.58). The 2000 amendment to 28 C.F.R. § 550.58 clarified the applicable transitional programs to include a community-based program. 65 FR 80745, 80746-48 (Dec. 22, 2000) (codified at 28 C.F.R. § 550.58). This modification did not alter the definition of Petitioner's criminal conduct or increase the punishment for his crime. *See* Warren v. Miles, 230 F.3d 688, 692-93 (5th Cir. 2000) (although petitioner was not explicitly excluded from early release consideration under regulations and program statements in existence at time of petitioner's offense conduct, BOP could have refused to consider him for early release in accordance with those guidelines, and subsequent amendments to rules and program statements merely clarifying that cases like petitioner's should not be considered for early release was not a "change" that placed petitioner at risk of increased punishment); *see also* Seacrest v. Gallegos, 30 Fed.Appx. 755, 756, 2002 WL 93138 (10th Cir. 2002) (BOP's subsequent refusal to grant early release to petitioner upon completion of RDAP, after originally provisionally granting eligibility for early release, did not affect the legal definition of petitioner's crime or increase his punishment). Furthermore, the version of Program Statement 5330.10 applied to Petitioner's case was promulgated in 1996, well before Petitioner committed the offenses for which he is incarcerated. BOP Program Statement 5330.10 (effective June 226, 1995) (as amended May17, 1996). Therefore, Petitioner's claim that the BOP violated the Ex Post Facto Clause in denying him CCC placement and consideration for early release is not tenable.

> F.   BOP regulations and program statement are invalid under the Administrative Procedure Act (APA) because the BOP failed to comply with the notice and comment requirements of the APA.

Petitioner claims that the BOP failed to comply with the notice and comment requirements of the APA in promulgating 28 C.F.R. §§ 550.58 and 524.13 and the program statements regarding inmate eligibility for CCC placement and early release (*see* Doc. 63 at 12-13).

The APA requires federal agencies to provide public notice of proposed rule making and a 30-day period for public comment prior to the regulation becoming effective. *See* 5 U.S.C. § 553(b, c, d). A regulation that does not comply with the APA is invalid. *See* Auer v. Robbins, 519 U.S. 452, 459, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). The term "rule" is defined broadly to include, "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . ." 5 U.S.C. § 551(4). However, the statute specifically exempts "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice . . ." from the notice and comment requirements. 5 U.S.C. § 553(b)(A).

Petitioner's challenges to the regulation and program statements regarding early release consideration are without merit. With regard to 28 C.F.R. § 550.58, Respondent concedes that the interim rules amending that regulation, which were published in 1995, 1996, and 1997, were made effective prior to expiration of a 30-day comment period (*see* Doc 74 at 15, Exs. 8, 9, 10). However, the final rule, which became effective December 22, 2000, and incorporated the amendments proposed in the interim rules, complied with the notice and comment requirements of the APA, as it considered public comments submitted on the interim rules, and became effective well after expiration of the public comment period (*id*., Ex. 11).

The threshold question in the instant case is which version of 28 C.F.R. § 550.58 the BOP applied to Petitioner's case in determining his eligibility for CCC placement and a sentence reduction. Petitioner states the following under oath:

> During petitioner [sic] pretrial status at FDC-Miami and before late Dec. 2000, petitioner received information from other prisoners returned from institutions to court, advising that a prisoner can obtain time off their sentence by attending a drug treatment program of 500hr if the BOP determines that the prisoner has a drug abuse problem. Petitioner requested information on such matters from Dr. Genao and his willingness to participate in the 500hr treatment program. Dr. Genao was the drug abuse specialist at that time in FDC-Miami, and informed petitioner that he

> won't be able to participate in the program due to his pre-trial status, however, advised about another drug program called 40hr drug education that is provided to pretrial prisoners.  Dr. Genao also informed petition that participation in the 40hr program will aid his eligibility to the 500hr program and thus, early release consideration.[FN 2]   Petitioner forwarded Dr. Genao a coput [sic] requesting participation in such program.  Petitioner attended and completed the program from Jan 23, 2001 thru March 06, 2001.
> 
> 2. After petitioner's conviction and sentence [in February of 2003] and BOP designation, the BOP determined that petitioner has an [sic] substance abuse problem, thus became [sic] eligible for 500hr residence substance abuse treatment program.[FN 3]
> 
> 3. BOP has determined that although petitioner is eligible for participation in the DAP, petitioner is not entitled for early release consideration even after successfully completing the program because there's an Immigration Custom Enforcement (hereinafter ICE) detainer lodged against petitioner [FN 4] preventing participation at a CCC.[FN 5]

(Doc. 63 at 1-2).  Assuming Petitioner's statements are true, they do no establish that he requested participation in the community-based transition component of the RDAP  (i.e. placement in a CCC) or a sentence reduction prior to December 22, 2000.  Indeed, the administrative grievances submitted by Petitioner to demonstrate exhaustion of his claims show that he inquired about CCC placement in May of 2003 (*see* Doc. 20, Ex. C).  Having failed to show he requested placement in a CCC or a sentence reduction prior to December 22, 2000, Petitioner has failed to show that the BOP applied a version of section of 550.58 other than the final version promulgated on December 22, 2000, in determining his eligibility for CCC placement and a sentence reduction.  As discussed *supra*, this final version of 28 C.F.R. § 550.58 satisfied the requirements of the APA, therefore, Petitioner is not entitled to relief on this claim.  *See* Miller, et al. v. Gallegos, 125 Fed.Appx. 934, 936-37 (10th Cir. 2005).

Additionally, Petitioner's challenge to the portion of Program Statement 5330.10 which disqualifies from early release consideration those inmates who are not eligible for participation in a CCC, specifically, Chapter 6, pp. 1, 3, is without merit.  Program Statement 5330.10 merely interprets 28 C.F.R. § 550.58, and therefore is not subject to the notice and comment requirements of the APA.  *See* Reno v. Koray, 515 U.S. 50, 60, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995) (BOP's internal agency guideline which interpreted statutory language was akin to "interpretive rule" that did not require notice and comment").

Likewise, Petitioner's challenge to the validity of the regulation and program statement regarding CCC placement is without merit. Section 524.13 of Title 28 of the Code of Federal Regulations provides:

> The existence of a detainer, by itself, ordinarily does not affect the inmate's program. An exception may occur where the program is contingent on a specific issue (for example, custody) which is affected by the detainer.

28 C.F.R. § 524.13 (1991). That regulation was published February 8, 1991, and became effective August 2, 1991, well after the 30-day public comment period. *See* 56 FR 30676-01 (July 3, 1991); 56 FR 5302-01 (Feb. 8, 1991). Thus, Petitioner has failed to show the BOP failed to comply with the requirements of the APA in promulgating 28 C.F.R. § 524.13.

Petitioner's challenge to Program Statement 7310.04 is also without merit. Program Statement 7310.04 describes one type of BOP correctional program, namely, community-based programs. BOP Program Statement 7310.04, pp. 4-7. Placement in a Community Corrections Center (CCC) is one type of community-based program. *Id.* at 4. From the description of the CCC program set forth in the program statement, placement in a CCC is contingent on an inmate's custody, which is clearly affected by the existence of an unresolved detainer. This program statement is not akin to a substantive rule, it merely provides an example of a BOP program that falls within the exception provided in 28 C.F.R. § 524.13. Therefore, Program Statement 7310.04 is not subject to the notice and comment requirements of the APA.

> G.   <u>The BOP violated the APA by failing to act on Petitioner's petitions filed pursuant to 5 U.S.C. § 553(e) seeking to issue, amend, or repeal rules to permit alien inmates with detainers to participate in CCC's and be eligible for sentence reductions.</u>

As his final claim, Petitioner contends the BOP violated section 553(e) of the APA by failing to respond to his requests to institute rulemaking proceedings to issue, amend, or repeal rules to permit alien inmates with detainers to participate in CCC's and be eligible for sentence reductions (Doc. 63 at 13). In support of his contention, Petitioner attached four petitions allegedly filed with

the BOP seeking issuance, amendment, and repeal of BOP rules and program statements (*see* Doc. 63, Ex. A).[4]

Section 553(e) of the APA provides, "Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." A person aggrieved by an agency's failure to act may seek judicial review to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 702, 706. Petitioner did not file the instant action under the judicial review provisions of the APA; rather, he seeks relief under 28 U.S.C. § 2241. The federal habeas statute is available only to challenge Petitioner's custody as "in violation of the Constitution or laws or treaties of the United States." The BOP's alleged failure to respond to Petitioner's requests for administrative rulemaking simply does not present a cognizable claim under section 2241, therefore, he is not entitled to relief.

IV.  CONCLUSION

The existence of a BICE detainer renders Petitioner ineligible for placement in a CCC and thus prevents him from completing the drug treatment program, thereby rendering him ineligible for a one year sentence reduction. The BOP did not violate the Constitution or federal law by denying Petitioner placement in a CCC and a sentence reduction.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the second amended petition for writ of habeas corpus (Doc. 63) be **DENIED**.
2. That the clerk be directed to close the file.

At Pensacola, Florida, this 26th day of July, 2005.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4]The first petition seeks amendment to Program Statement 5330.10 to determine Cuban criminal aliens eligible for early release after completing the RDAP or any other drug program (Doc. 63, Ex. A). The second petition seeks issuance of a new rule or amendment to Program Statements 5111.01 and 5111.03 to require the BOP to coordinate with BICE in determining whether Cuban criminal aliens will be detained after expiration of their federal sentences to enable the BOP to place them in CCC's (*id.*). The third petition seeks issuance of a new rule or clarification of an unidentified existing rule to state that the existence of a immigration detainer does not exclude Cuban criminal aliens from participation in CCC's (*id.*). The fourth petition seeks amendment or repeal of Program Statement 7310.04 and issuance of a new rule to clarify the alleged conflict between Programs Statements 7310.04 and 5100.07 (*id.*).

Case No.: 3:03cv515/RV/EMT

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**